CENTRAL ILLINOIS LIGHT COMPANY, Petitioner, v. THE POLLUTION CONTROL BOARD et al., Respondents.

(No. 72-306;

Third District—February 20, 1974.

William Wombacher, of Peoria, for petitioner.

Prescott Bloom, Assistant Attorney General, of Peoria, for respondents.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

This is a petition for review of an order of the Pollution Control Board (PCB) finding petitioner Central Illinois Light Company, an Illinois Corporation, guilty of the violation of the Environmental Protection Act of 1970 pursuant to a complaint filed by the Environmental Protection Agency (EPA). The board assessed a penalty of $15,000 against petitioner resulting in this petition for review of the penalty assessed and the underlying findings of the board. The complaint related to the petitioner's operation of power generating facilities known as Wallace Station and located on the Illinois River in East Peoria, Tazewell County. The complaint filed by the respondent EPA alleged violations beginning sometime prior to April 24, 1970, and continuing thereafter until the filing of a complaint on March 6, 1972. The statutory provision allegedly violated was section 9 of the Environmental Protection Act of 1970, which provides:

"Section 9

No person shall:

a) Cause or threaten or allow the discharge or emission of any contaminant into the environment in any State so as to cause or tend to cause air pollution in Illinois, either alone or in combination with contaminants from other sources, or so as to violate regulations or standards adopted by the Board under this Act;" Ill. Rev. Stat. 1971, ch. 111½, sec. 1009.

The petitioner filed an Air Contaminant Emission Regulation Program (ACERP) with the technical secretary of the Illinois Air Pollution Control Board which was granted and approved by the board on April 24, 1969, and which expired on April 24, 1970. The petitioner as part of its ACERP program agreed to have stack tests run on its boilers after completion of a program of modernization of its electrostatic precipitators. After tests were run in September 1971 and January 1972 and while awaiting the test results a Mr. Wennmacher, an engineer of the Division of Air Pollution Control of the EPA, commenced an investigation which resulted in his recommendation that a complaint be filed against the petitioner. At approximately the same time as Mr. Wennmacher was conducting his investigation, being early in the year 1972, the petitioner undertook to have a second series of tests to be taken by Southern Research Institute, a not-for-profit research corporation (SRI).

During the hearing before the hearing officer appointed by the Illinois Pollution Control Board the evidence was of a highly technical nature and shows a sharp conflict of opinion as to the applicability and interpretation of a formula which had been adopted in Rule 3—3.112 of the rules

and regulations governing the control of air pollution and which was used by the respondent to determine allowable emissions of particulate matter. We will direct our attention further to the technical evidence adduced during the course of the hearing as it becomes pertinent to the issues raised in this appeal.

■■ One of the contentions raised by the petitioner is that the power vested in the PCB to assess penalties is unconstitutional. This raises a question which was previously decided by the court adversely to the claim of the petitioner in *Ford v. Environmental Protection Agency*, 9 Ill.App.3d 711, 292 N.E.2d 540. We adhere to the rule in the *Ford* case even though the same result has not been reached by other appellate courts in our state. (*City of Waukegan v. Environmental Protection Agency*, 11 Ill.App.3d 189, 296 N.E.2d 102.) The resolution of this issue is presently pending before the Illinois Supreme Court and we believe no useful purpose would be served by any further discussion of this issue.

■■ A further issue raised by the petitioner is that the findings by the PCB are contrary to the weight of the evidence. In confronting this issue we recognize at the outset that it is well-recognized law that the Board's decision must be based on the record and material findings of fact must be supported by evidence. (*City of Monmouth v. Environmental Protection Agency*, 10 Ill.App.3d 823, 295 N.E.2d 136; *North Shore Sanitary District v. Pollution Control Board*, 2 Ill.App.3d 797, 277 N.E.2d 754; *Citizens Utilities Company v. Illinois Pollution Control Board*, 9 Ill.App.3d 158, 289 N.E.2d 642.) In determining whether the findings of fact by the Board were supported by the evidence presented we must analyze the evidence and theory used to prove a violation by the respondents as well as the evidence and theory of defense presented by the petitioners. Delving into the complex and technical evidence presented it becomes clear that the respondents attempted to prove alleged violations of air pollution by the testimony of Mr. Wennmacher, who made certain calculations as to "expected" emission levels of the respondent's boilers and plant, and that these "expected" emissions were based upon maximum load operating conditions of the boilers. In making such calculations Mr. Wennmacher used the data appearing on the boilers, which is referred to as "name plate rating," rather than the actual heat input of a certain boiler or boilers on a given date. Simply put, the violations of the petitioner were based on the maximum rate capability of the boilers as determined by their manufacturer and not on how they were actually used. The Board itself, in its opinion, which included findings, recognized that new regulations (not applicable in the instant case) provide for an actual heat input computation rather than name-plate ratings in determining the amount of emissions of particulate matter.

The Board then made the interesting observation that the only defense for the use of name-plate rating was "ease of enforcement." This is indeed an unusual statement from a body which is assuming judicial powers. The concern should not be with ease of enforcement but whether an actual violation occurred and when, where and how long. It is foreseeable that in installing equipment a power-generating plant might well install boilers having a far greater capacity than presently needed but adequate for future expansion. Such was not the situation in the case before us but using name-plate ratings illustrates the danger to a company which made such an installation with its eyes fixed on future growth. It is elementary that one should be found guilty for what one does and not for what one can do. It is clear from the record that there is a total absence of evidence that would reflect when the petitioner was in violation or for how long. We do not conclude that the petitioner was not in violation, it may well have been, but such a finding is not supported by the evidence. The evidence must support the "fact" of a violation, not the "ability" to violate.

■■ "The Illinois cases have held that the reviewing court will search only the record in order to ascertain if the administrative findings are supported by the evidence * * *. [T]he courts are not authorized to reweigh the evidence or to make an independent determination of the facts. The reviewing court is limited to a consideration of the record to determine if the findings and orders of the administrative agency are against the manifest weight of the evidence * * *." *North Shore Sanitary District v. Pollution Control Board*, 2 Ill.App.3d 797, 277 N.E.2d 754.

That the Board could not from the evidence make a finding as to the specific time or times that the petitioner was in violation is manifested by the penalty imposed.

■■ The statutory authority for imposing penalties for violations of the Environmental Protection Act is simple and specific. It provided that:

> "Any person who violates any provision of this Act, or any regulation adopted by the Board, or who violates any determination or order of the Board pursuant to this Act, shall be liable to a penalty of not to exceed $10,000 for said violation and an additional penalty of not to exceed $1,000 for each day during which violation continues, which may be recovered in a civil action, and such person may be enjoined from continuing such violation as hereinafter provided * * *." (Ill. Rev. Stat. 1971, ch. 111½, sec. 1042.)

In the instant case the penalty imposed was a $15,000 fine but we can only ask, what was the basis for such a penalty? Was there one viola-

tion which required a $10,000 penalty and then five subsequent daily violations which merit a $1,000 penalty each? Any number of bases for the penalty imposed could be arrived at if one would indulge in conjecture, but the penalty statute does not authorize such conjecture. That the penalty was imposed in such a manner only fortifies our conclusion that the Board from the evidence was unable to specifically state when if any violations occurred.

For the reasons set forth we direct that the order of the Illinois Pollution Control Board be vacated.

Order vacated. Case reversed.

DIXON and STOUDER, JJ., concur.