MARQUETTE CEMENT MANUFACTURING COMPANY, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Third District No. 79-851

Opinion filed May 30, 1980.

Johnnine Brown Hazard and Joseph S. Wright, Jr., both of Rooks, Pitts, Fullagar & Poust, of Chicago, for petitioner.

William J. Scott, Attorney General, of Chicago, and Michael Mauzy, of Illinois Environmental Protection Agency, of Springfield (George William Wolff and William Blakney, Assistant Attorneys General, of counsel), for respondents.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Petitioner Marquette Cement Manufacturing Company (hereinafter Marquette) appeals from the order of the Pollution Control Board (hereinafter PCB) dismissing Marquette's petition for review of the Illinois Environmental Protection Agency's decision, denying Marquette's permit application. Review in this court is pursuant to section 41 of the Illinois Environmental Protection Act (hereinafter Act). Ill. Rev. Stat. 1977, ch. 111½, par. 1041.

Marquette had filed an application for an air operating permit for its Oglesby cement plant with the Agency. The Agency denied the permit application, specifying as its principal reason the fact that Marquette had not sufficiently shown that the plant's operations would not cause violations of air quality rules and regulations. Review of the Agency's denial was sought before the PCB. (Ill. Rev. Stat. 1977, ch. 111½, par. 1041.) Due, however, to scheduling problems, the requested and required hearing before the PCB was not set within the 90 days provided by statute. (Ill. Rev. Stat. 1977, ch. 111½, par. 1040.) When the board sought a waiver of the 90-day provision from petitioner, Marquette refused to waive the 90-day requirement.

Thereafter, fearing dismissal of the petition for review without a hearing, Marquette filed a motion, designated a summary judgment motion, with the PCB. In that motion, Marquette requested that the PCB order the permit to issue on the basis of the record before it at that time. In a 3-2 vote, after discussion of the case at the PCB's meeting, the PCB thereafter dismissed Marquette's petition for review, for lack of a hearing and for an alleged deficiency in the petition. From that dismissal Marquette appeals. It raises three issues: (1) whether the PCB erred in dismissing the petition for review for lack of a hearing; (2) whether the PCB erred in dismissing the petition for review as deficient; and (3) whether, given the record, the PCB and the Agency erred in not granting Marquette its requested operating permit.

The record reveals that Marquette owns and operates a Portland cement manufacturing facility known as the "Oglesby plant," near the city of Oglesby in La Salle County. Operation of the plant generates particulate matter which is emitted into the atmosphere. The plant is equipped with a variety of air pollution control devices. The plant is also subject to the requirements of the Illinois Environmental Protection Act provisions (Ill. Rev. Stat. 1977, ch. 111½, par. 1001 *et seq.*), specifically, in the instant case, to the permit requirements thereunder.

Marquette first applied to the Agency for an air operating permit in May 1973. A permit was thereafter deemed issued by operation of law on August 1, 1973. Again, in June 1976, Marquette applied for a permit, and it was deemed issued by operation of law. Then, on April 9, 1979, Marquette asked that its 1976 application for an air operating permit for the Oglesby plant again be acted upon. At the time of the April 1979 permit application, Marquette and the Agency had been cooperating to implement a proposed settlement agreement which included a program to improve the control and monitoring of particulate emissions at the Oglesby plant. The proposed agreement grew out of an enforcement proceeding brought by the Agency in 1977, Illinois Environmental Protection Agency v. Marquette Cement Manufacturing Company, PCB 77-25. The program was designed to conclusively establish Marquette's compliance with the Act and the Board's regulations and to end the dispute with the Agency.

By letter dated May 8, 1979, the Agency denied Marquette's application for a permit, alleging in the denial letter the possibility of air pollution violations, the existence of citizen complaints, and the lack of information from Marquette about whether emissions from the plant caused or contributed to ambient air quality violations in the immediate area. Marquette then filed, on June 28, 1979, a petition for review of the denial with the PCB and thereby sought a hearing on the Agency's actions. Under section 40 of the Act, the PCB must take final action on a petition within 90 days of the date on which the petition is filed. (Ill. Rev. Stat. 1977, ch. 111½, par. 1040.) If the Board does not do so, then section 40 provides that a default permit is thereafter deemed issued. Under the 90-day statutory requirement, a final PCB decision in the instant case was due on or before September 26, 1979. Section 40 of the Act also requires a hearing on the petition for review, which hearing must be conducted only after the Board has provided 21 days notice to the public and the parties. Ill. Rev. Stat. 1977, ch. 111½, par. 1040.

No hearing was held, although Marquette engaged in substantial discovery in preparation for such a hearing. Due to scheduling difficulties of an unspecified nature, the hearing officer appointed by the Board to hear the case, unilaterally, on September 4, 1979, set a hearing date for October 3, 1979. That date allowed for compliance with the 21-day public-notice provision of the statute, but it did not comply with the requirement for Board action within the statutorily specified 90-day period. According to affidavits in the record, a Board officer then suggested that Marquette file a waiver of the 90-day requirement so that a hearing could be held in October. Marquette declined to file a waiver. The bases for their refusal to such a waiver were (1) that the hearing officer could have complied with all requirements by setting the hearing

on September 25, instead of October 3; (2) that the unnecessary delay, caused by the hearing officer, was prejudicial to their interests, given potential civil penalties in the enforcement proceeding then pending; and (3) that the Act neither authorizes nor requires an extension of the 90-day period. Marquette also took the position that the PCB could order issuance of the permit on the merits, given the record before it, even without a hearing.

Thereafter, on September 18, 1979, prior to the running of the 90-day period, Marquette filed a motion with the PCB, asking for summary judgment on their petition for review. Marquette requested that the PCB order the permit issued on the basis of the record before it. Marquette's petition and motion were considered at the Board's September 20, 1979, meeting. After a discussion between the five Board members on the best approach to take in the matter, the Board voted 3-2 to deny the petition for review without prejudice. The asserted grounds for their dismissal were lack of a hearing and an alleged deficiency in the petition. From this decision by the PCB, Marquette appeals.

Marquette first argues that the PCB erred in dismissing its petition for lack of hearing. Under section 40 of the Act, a hearing is required to be held by the Board upon petition by an applicant who has been denied a permit by the Agency. If there is no final action by the Board within 90 days from filing the petition, then a petitioner may deem the permit issued under the Act, except for certain inapplicable exceptions. The statute clearly contemplates and requires that *both* the hearing and final agency action shall occur within 90 days from the filing of the petition for review. According to the statutory timetable, as applied in the instant case, a hearing and final decision should have both been forthcoming by September 26, 1979.

In the instant case, however, the PBC, through its appointed hearing officer, had set the date for a hearing on October 3, 1979, almost a week beyond the 90-day limit set in the statute. There is no assertion made that the delay in the date for a hearing was caused by petitioner Marquette, nor does the PCB deny that compliance with the statute was possible. The reason for setting the October date was a perceived inability to meet the 21-day notice requirement within the 90-day limitation period. Whatever the reasons behind setting the October date, by setting October 3 as a hearing date, the hearing officer, and through him the PCB, clearly indicated to Marquette that there would be no hearing for them within the required 90-day period. The solution to the problem, so far as the PCB and the Agency were concerned, was for Marquette to file a waiver of its right to a decision within 90 days. Marquette refused to make any such waiver, arguing prejudice in the enforcement action and the fact that the delay was not occasioned by them at all.

According to the uncontradicted affidavit of Marquette's counsel, attached to the motion before the PCB, Marquette was then informed by an official of the PCB that "if by September 20, 1979 (the next meeting of the Pollution Control Board) Marquette does not file a waiver of its right to a 90-day decision by the Board, the Board will deny Marquette's petition for review without a hearing." Faced, it believed, with the prospect of having its petition denied without a hearing, and as a punitive measure for refusing to waive its right to a hearing within 90 days, Marquette responded by filing a motion for summary judgment with the PCB, requesting that it grant the petition for review and order the Agency to issue the air operating permit. The record shows that this action by Marquette was a defensive move, seeking to force the issue on the Board, in the face of the threat to dismiss the petition without a hearing. Marquette argued in the motion that the record as it stood at that time was sufficient to show that it had met the requirements for issuance of the permit, and it asked the PCB to order the permit issued.

Thereafter, on September 20, 1979, the PCB held its scheduled meeting. Marquette's petition for review and motion came up, although the record indicates that the Board members did not fully apprehend the nature of summary judgment motions as utilized in the circuit courts. At the meeting, the chairman of the PCB opened discussion among board members by noting that no hearing had been held and that the 90 days was going to run out without a hearing. He recommended, at the outset, that the PCB either dismiss the petition without prejudice or remand it to the Agency. His stated grounds for the dismissal were lack of a hearing and, secondarily, the petition's alleged lack of conformity with Procedural Rule 502(a)(2)(iv) of the PCB. His recommended dispositions expressly did not reach the merits of the petition for review. In the discussion that followed, three board members, including the chairman, expressed their firm belief that a hearing was necessary, prior to any decision on the petition, in order to ensure a complete record with full factual development. The Agency had apparently presented the Board with data opposing the permit on the day of the hearing. No discussion of the petition itself took place. After some discussion on how best to address the "procedural goof up," and after the three members indicated their unwillingness to grant the petition without more information by way of a hearing, the chairman put it to Marquette directly:

> "Well, it seems to me to be very simple. Either Marquette waives and gives us time for the hearing, or we have to make some kind of decision today."

Thereafter, the members voted 3-2 to dismiss the petition without prejudice. In a brief discussion after the vote, one of the Board members

voting with the majority stated that "the only reason" he was voting to deny the petition was the fact that the hearing had not been held.

■■■ What the record in this case reveals is unfortunate and regrettable conduct on the part of the Board. We find that Marquette has sufficiently established that the true basis for the Board's action in dismissing their petition was the failure to have a hearing. Yet responsibility for that failure lay not with Marquette, but with the PCB and its hearing officer. It is evident that the PCB's action dismissing the petition for review, as it did, effectively punished Marquette for failure to waive its rights and also punished Marquette for the PCB's failure to satisfy the statutory requirement of a hearing and a decision within 90 days. The action taken by the PCB was a transparent attempt to circumvent the requirements of the statute and should be reversed as arbitrary, capricious and unreasonable under the circumstances. (See *Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 310, 319 N.E.2d 782; *SCA Services v. Illinois Pollution Control Board* (1979), 71 Ill. App. 3d 715, 718, 389 N.E.2d 953.) Marquette had a right to a hearing and to a final decision within 90 days from filing the petition, absent their own delay or other extraordinary circumstances not present in this case. When the PCB indicated its unwillingness to provide the hearing within that time, which it did by setting the October 3 hearing date, it thereby breached the requirements of the statute. The permit should have been deemed issued as of September 26, 1979, the final day of the 90-day period. The Board's attempt to cure its breach of the statutory requirement of a hearing by making a final decision within 90 days, but without a hearing, cannot stand. The statute contemplates both a hearing and a final decision within 90 days. If either is not forthcoming within that time, then the permit is deemed issued under the Act. In the instant case, the hearing was not held, and the permit is, therefore, deemed to have issued.

The Board seeks to support its dismissal order with its alternate finding, that Marquette failed to comply with Rule 502(a)(2)(iv), requiring submission of material as may be necessary to show the issuance of a permit will not cause a violation of the Act or regulations. Such a basis does not support the dismissal. Regardless of the merits of the petition, the essential and controlling fact remains that the Board did not provide for the hearing within the required 90 days, and therefore the permit must be deemed issued. We would also note that insofar as the PCB uses subsection (a)(2)(iv) of the Procedural Rule 502 to address the issue of the sufficiency of the petition in satisfying petitioner's ultimate burden of proof, such question is one on the merits. Once supporting material is submitted indicating that issuance of a permit would cause no violations, that is, once petitioner has met his burden of production, then the

sufficiency and weight of such proof is a question on the merits, which would be addressed after a hearing. In this case, the petition did contain supporting material, in the form of information from the Agency's own reports and figures, which indicated the plant's compliance with applicable regulations. Thus, Marquette clearly satisfied its initial burden of production with regard to a showing that no violations would be caused by issuance of the permit. However, additional data submitted by the Agency to the Board, after the Agency's denial but prior to the Board meeting, indicated possible violations by the Oglesby plant.

■ That data would properly have been presented by the Agency at a hearing to support its denial. It was this data which was alluded to by board members in expressing doubts over compliance. Yet, because no hearing was held, Marquette was prevented from challenging the accuracy and reliability of that additional data which was before the PCB at their meeting. We conclude that, under these circumstances, the finding of the PCB concerning the sufficiency of proof supporting the petition was a finding on the merits. That issue could not properly be addressed until after a hearing. Additionally, in passing, we would note that no inquiry into the sufficiency of the petition and its compliance with Rule 502(a)(2)(iv) was made by board members prior to arriving at their decision to dismiss. One of the members voting with the majority to dismiss the petition openly stated, on the record, that his *only* reason for so doing was the failure to hold the hearing. In these circumstances the Board's attempt to prop up its decision with citation to Procedural Rule 502 was not effective. A board decision must be based on the record and findings of fact must be supported in the evidence. *Central Illinois Light Co. v. Pollution Control Board* (1974), 17 Ill. App. 3d 699, 308 N.E.2d 153.

■ The Board also argues, in urging affirmance of its decision, that by filing the summary judgment motion, Marquette waived its right to a hearing within 90 days. Such argument is unpersuasive and incredible in light of the uncontroverted facts on that issue. At the time of the filing of the motion by Marquette, it had been informed that a hearing would not be held within 90 days, as required. Marquette indicated its desire for a hearing and also its firm refusal to waive its right to a hearing. It refused to waive its right to a hearing both before and during the September 20, 1979, PCB meeting. As we noted earlier, the motion was a defensive move by Marquette in the face of the PCB's indication that no hearing would be held and that the matter would be decided without a hearing. Throughout the proceedings Marquette has insisted on its right to a hearing within the 90 days specified in the statute. Under the circumstances, we cannot agree with counsel for PCB that the record shows that Marquette intentionally and knowingly abandoned its right to a hearing when it filed the motion. At the time Marquette filed its motion, the PCB had taken Marquette's

right to a hearing, within 90 days, away from Marquette. We cannot ignore the facts and tortuously construe allegations in the motion to find a waiver of that right.

Accordingly, the decision of the Pollution Control Board in this matter is reversed, and a permit is deemed to have issued to Marquette as of September 26, 1979.

Reversed.

STOUDER and BARRY, JJ., concur.