THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellant, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees (The County of La Salle *ex rel.* Gary Peterlin, State's Attorney of La Salle County, *et al.*, Respondents; William Clarke *et al.*, Respondents and Cross-Appellants, *v.* The Pollution Control Board, Respondent and Cross-Appellee).—THE COUNTY OF LA SALLE *ex rel.* GARY PETERLIN, State's Attorney of La Salle County, *et al.*, Petitioners-Appellants, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees (William Clarke *et al.*, Respondents and Cross-Appellants, *v.* The Pollution Control Board, Respondent and Cross-Appellee).

Third District   Nos. 82—180, 82—190 cons.

Opinion filed March 8, 1983.

284

TRAPP, J., concurring in part and dissenting in part.

Tyrone C. Fahner, Attorney General, of Springfield (H. Alfred Ryan, Assistant Attorney General, of counsel), for the People.

Joseph V. Karaganis and Russell R. Eggert, both of Karaganis & Gail, Ltd., of Chicago, for County of La Salle *et al.*

Thomas J. Immel, of Burditt & Immel, and Lee K. Zelle, both of Springfield, for respondents Pioneer Development and William Clarke.

No brief filed for respondents Illinois Pollution Control Board, Illinois

Environmental Protection Agency, and Wilmer and Edith Brockman.

JUSTICE LEWIS delivered the opinion of the court:

This case consolidates two appeals from an order of the Illinois Pollution Control Board which affirmed the Illinois Environmental Protection Agency's issuance of a permit for the construction of a hazardous waste disposal site. Case No. 82—180 is an appeal brought by the Attorney General of the State of Illinois. Case No. 82—190 is an appeal brought by the County of La Salle and others.

The recipients of the permit have cross-appealed from certain findings of the Pollution Control Board.

FACTS

### A. THE PARTIES

The appellants in case No. 82—190 are the County of La Salle, the village of Naplate, the city of Ottawa, the village of Utica, Ottawa Township Board of Trustees, the town of Ottawa, Residents Against Polluted Environment, Rosemary Sinon, Marie Madden, and Joan Benya Bernabei. These parties will be referred to as "petitioners."

The named appellees in both cases are the Illinois Pollution Control Board (Board), the Illinois Environmental Protection Agency (Agency), William Clarke, Pioneer Development, Pioneer Processing, Inc., and Wilmer and Edith Brockman. The Agency, the Board, and the Brockmans have not filed a brief in this appeal. William Clarke, Pioneer Development and Pioneer Processing, Inc., will be referred to as "Pioneer."

### B. THE AGENCY HEARING

On July 1, 1980, Pioneer and others filed an application with the Illinois Environmental Protection Agency seeking a modification of an existing permit. The existing permit authorized the development of a sanitary landfill and Pioneer's application for modification sought authorization to develop a hazardous waste disposal site. The proposed development is to be constructed on a 177-acre site in La Salle County, Illinois.

The Agency scheduled a public hearing in Ottawa on November 21 and 22, 1980, pursuant to section 39(c) of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1039(c)). The public notice of the hearing outlined the procedures that would be followed and provided:

"The public hearing will be divided into two parts: the day ses-

sions will be reserved for an adversary hearing where legal counsel or other registered representatives of Pioneer Properties or an opposition group may present expert witnesses who will be subject to cross-examination by the other side. The evening session will be reserved for oral comments from individual local residents. Individuals commenting during the evening session will be limited to 7 minutes each, but they will not be subject to cross-examination. In addition, written comments for the record can be submitted during all public hearing sessions and for 14 days after November 22, 1980. Oral and written testimony will be accepted on the appropriateness of the Pioneer Properties site for the treatment and disposal of solid waste, including special and hazardous waste."

The day session on November 21 began with a presentation by various Pioneer personnel and technical experts describing the proposed project. After the Pioneer presentation, attorneys for interested persons cross-examined Pioneer's experts. Attorneys representing La Salle County, the village of Ottawa, Ottawa township and several landowners in La Salle County participated in the cross-examination. In the evening session on November 21, 29 persons made public comments. The day session on November 22 consisted mostly of the cross-examination of Pioneer's witnesses by Michael Heaton, an attorney representing petitioner, Rosemary Sinon. Heaton also elicited evidence from his own expert witness.

During the November 22 hearing and prior to the close of the hearing, the hearing officer stated that the record would remain open until December 12 for written comments. Between December 3 and December 11, Heaton submitted material for the record which included resolutions in opposition to the permit from the Ottawa Township Board and the La Salle County Board. The material also included several petitions in opposition to the permit. Numerous citizens and some local governmental units also made post-hearing submissions opposing the permit. Pioneer's post-hearing submissions included responses to (1) issues raised by the testimony of Heaton's expert witness on the November 22 hearing; (2) statements made by citizens at the November 21 evening session; and (3) the cross-examination of Pioneer's experts.

The Agency issued a permit to Pioneer on December 22, 1980, which authorized the development of the site for hazardous waste disposal. The permit only authorized the construction of the site and specifically prohibited actual operation and disposal of hazardous waste on the site without an operating permit.

## C. THE FIRST BOARD HEARING AND CIRCUIT COURT PROCEEDINGS

Petitioners filed a petition for review and revocation of the permit with the Illinois Pollution Control Board on January 26, 1981. The petition alleged, *inter alia*, that the Agency failed to perform its duty to protect the public health and environment; that the Agency proceedings violated the provisions of the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1981, ch. 127, par. 1001 *et seq.*) and that the Agency procedures violated petitioner's constitutional rights to due process. The Board appointed a hearing officer who scheduled a hearing for April 6, 1981, to be held in Ottawa.

Prior to the hearing, Pioneer filed a motion *in limine* which requested the Board to specify the procedures to be followed at the Board hearing. Pioneer noted that section 40(b) of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1040(b)) required the hearing to be exclusively on the record before the Agency. Pioneer suggested that the hearing should be limited to oral arguments by the parties and that the Board should not hear any additional testimony or factual statements.

Petitioners filed objections to Pioneer's motion *in limine*. Petitioners agreed that review by the Board should be limited to the record before the Agency but argued that the record submitted to the Board did not include all of the evidence on which the Agency relied in issuing the permit. Petitioners claimed that they were entitled to introduce this additional evidence at the Board hearing.

In its order ruling on Pioneer's motion *in limine* and petitioners' objections, the Board stated that if evidence outside the Agency record was offered at the hearing, the hearing officer was to rule on its admissibility. If the hearing officer admitted the evidence, the adverse party could note their objections to the Board. If the hearing officer did not admit the evidence, the party tendering the evidence would be allowed to make an offer of proof "where the proffer [was] otherwise relevant." The Board also stated that a reasonable time should be allowed for public comment. Finally, the Board stated that under section 40(a) of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1040(a)), Pioneer may deem the permit issued unless the Board ruled on the petition within 90 days of its filing.

On March 20, 1981, 17 days before the scheduled hearing, petitioner Rosemary Sinon filed suit in the La Salle County circuit court seeking a declaratory judgment that the permit was void and asking for a preliminary injunction prohibiting Pioneer from proceeding in reliance on the permit. Pioneer, the Agency, the Agency's director, and Wilmer and Edith Brockman were named defendants.

After hearing arguments, Circuit Judge Leonard Hoffman entered an order finding that the proceedings before the Agency violated Sinon's rights under the Illinois Administrative Procedure Act and the due process clauses of the Illinois and United States constitutions and, as a result of these violations, Pioneer's permit was void. The order enjoined the named defendants from "enforcing or otherwise relying upon [the permit] and from undertaking, allowing or causing in any manner, directly or indirectly, any activity to develop a hazardous waste sanitary landfill pursuant to said permit." The order was dated March 5, 1981.

On April 2, 1981, a prehearing conference was held in Ottawa by the Board's hearing officer. Russell Eggert, representing certain petitioners, informed the hearing officer of the preliminary injunction and suggested that Pioneer could not participate in the April 6 hearing without violating the order. The hearing officer indicated that the hearing would be held as scheduled and would begin at 9:30 a.m. The next day, April 3, petitioners filed a motion to enforce the preliminary injunction. A hearing on the motion was set for 9 a.m., April 6 (the day of the Board hearing). After hearing arguments, Judge Hoffman issued the following order:

"Plaintiffs Motion to Enforce Preliminary Injunction *** is granted:

(a) All parties to this cause are hereby ordered to refrain from proceeding in any way before The Illinois Pollution Control Board in cause No. PCB 81—10.

(b) The permit being void, the proceeding in No. PCB 81—10 shall not go forward until further Order of this Court.

(c) This Order shall apply to all parties hereto and to the Pollution Control Board."

At 10:05 a.m. on April 6, the hearing officer opened the Board hearing. Attorneys representing Pioneer and the Agency were present. Timothy Creedon, an attorney representing Ottawa Township, was also present and told the hearing officer that the Board hearing had been enjoined and that a written order was being prepared. The hearing officer stated that neither he nor the Board were parties to the circuit court proceedings nor had they received formal notice of the proceedings and that he would conduct the hearing as planned. The hearing officer noted that the petitioners were making no formal presentation in opposition to the permit and opened the hearing for public comment. One public comment was made. The hearing officer terminated the hearing at 10:20 a.m., 15 minutes after it had been opened.

At 11:10 a.m., April 6, the hearing officer reopened the record at the request of attorneys for petitioners who had been before Judge Hoffman that morning and had obtained a motion to enforce the circuit court's preliminary injunction. Attorney Karaganis delivered the enforcement order to the hearing officer and stated that petitioners were not proceeding with the administrative proceedings. The reopened hearing was closed at 11:16 a.m.

On April 16, 1981, the Board entered an order stating that pursuant to the preliminary injunction entered by the circuit court of La Salle County, proceedings before the Board were stayed until a final adjudication by the State courts on the injunction. The Board construed the injunction as tolling the statutory 90-day limitation for a final decision by the Board. The Board determined that as of April 6, 1981, 20 days remained on the 90-day period. The injunction was eventually dissolved on January 25, 1982, by a mandate from the Third District Appellate Court. (See *County of La Salle ex rel. Peterlin v. Mauzy* (1981), 98 Ill. App. 3d 615, 424 N.E.2d 857, *appeal denied* (1981), 85 Ill. 2d 566, *cert. denied* (1982), 454 U.S. 1148, 71 L. Ed. 2d 302, 102 S. Ct. 1012.) The Board resumed its countdown on the 90-day period on January 26, 1982.

### D. THE SECOND BOARD HEARING

After the injunction was dissolved, the Board ordered that another hearing be held on February 6, 1982. Pioneer filed a motion for a permit by default or alternatively for affirmance without additional hearings on the basis that the 90-day period for Board action had expired. Petitioners filed a motion for summary reversal of the Agency's issuance of the permit. Petitioners also filed a motion to compel the attendance of two witnesses; Thomas Cavanagh, the manager of the Agency's permit section, and Terry Ayers, an Agency engineer who reviewed Pioneer's application. The Board deferred action on Pioneer's motion for a permit by default and petitioners' motion for summary reversal stating that it would take the motions with the case. The Board granted petitioners' motion to compel the attendance of Cavanagh and Ayers. The Board stated that "[t]he [witness'] depositions indicate that they have direct knowledge of the Agency's review process in this matter and the sufficiency of the record. That information is clearly relevant to this proceeding and is best presented at hearing with a full opportunity for cross-examination."

The Board hearing was opened on February 6, 1982, in Ottawa, Illinois. The hearing lasted from 10:15 a.m. to 9 p.m. and was continued to February 8. The February 8 session started at 9 a.m. and the

hearing was closed at 11 p.m.

The meeting on February 6 began with opening statements by Joseph Karaganis, representing the petitioners; by Thomas Immel, representing Pioneer; and by Delbert Haschemeyer, representing the Agency. After opening statements, petitioners introduced exhibits for identification. The exhibits consisted of material from Agency files and depositions of Cavanagh and Ayers. (Throughout the hearings, petitioners introduced 78 exhibits for identification and over 40 exhibits were admitted into evidence.) After the identification of exhibits, petitioners' attorney Karaganis examined Cavanagh on matters relating to the exhibits. This examination continued until the February 6 hearing was recessed.

On February 8, the hearing was reconvened and time was allotted for public comments. After the public comments, Karaganis continued examination of Cavanagh. Cavanagh was cross-examined by Lee Zelle, who represented petitioners. Michael Heaton was then called as a witness by petitioners. Heaton was questioned about dealings he had with the Agency while he was representing certain petitioners during the Agency proceedings on Pioneer's permit. After Heaton was cross-examined by Zelle, the hearing officer allowed public comments and then adjourned the hearing.

### E. THE BOARD'S ORDER

On February 16, 1982, the Board entered an order affirming the Agency's grant of Pioneer's permit. A written opinion was issued on March 4, 1982, which responded to various issues raised by the parties during the proceedings before the Board. The opinion stated that (1) Pioneer could not deem its permit issued under the 90-day limitation for Board action under section 40(a) of the Environmental Protection Act; (2) Pioneer was not entitled to a permit by default as a result of petitioners' failure to attend the Board hearing scheduled for April 6, 1981; (3) the contested case provisions of the Illinois Administrative Procedure Act did not apply to public hearings held by the Agency; (4) petitioners' due process rights were not violated by the procedures followed at the Agency's hearing; (5) the Agency's decision to issue the permit was supported by the record; and (6) the issuance of the permit did not violate section 21(g) of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1021(g)), which required the permit applicant to obtain approval from nearby municipalities for the construction of a hazardous waste site and prohibited the location of a site within 1,000 feet of a private well.

E. SUBSEQUENT PROCEEDINGS

Petitioners filed a petition for review of the Board's order with the appellate court pursuant to section 41 of the Environmental Protection Act. (Ill. Rev. Stat. 1979, ch. 111½, par. 1041.) Pioneer filed a cross-petition alleging that the Board erred in ruling that Pioneer could not deem its permit issued under section 40(a) of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1040(a)). On March 16, 1982, the Attorney General of the State of Illinois filed a petition for review of the Board's decision. The two appeals have been consolidated.

OPINION

I

The Attorney General did not participate in the proceedings before either the Agency or the Board. His first appearance in this case was his filing of a notice of appeal from the Board's decision with the appellate court. The question is presented as to whether the Attorney General has standing to appeal.

Section 41 of the Environmental Protection Act lists the persons and parties who may obtain judicial review of Board decisions. It states:

"Any party to a Board hearing, any person who filed a complaint on which a hearing was denied, any person who has been denied a variance or permit under this Act, and any party adversely affected by a final order or determination of the Board may obtain judicial review, by filing a petition for review ***."
Ill. Rev. Stat. 1979, ch. 111½, par. 1041.

The only provision which would conceivably apply to the Attorney General is "any party adversely affected by a final order *** of the Board." However, in *Lake County Contractors Association v. Pollution Control Board* (1973), 54 Ill. 2d 16, 294 N.E.2d 259, the supreme court interpreted this provision of section 41 and held that the word "party" means a party to the Board proceedings. It was argued that this interpretation would render the provision superfluous since the first phrase of section 41 states that any party to a Board hearing may obtain judicial review. Nevertheless, the supreme court indicated that its interpretation was necessary in order for section 41 to comport with certain provisions of the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 264 *et seq.*).

■■ The Attorney General was not a party to the Board proceedings and, therefore, had no statutory right to obtain judicial review of

the Board's decision. The Attorney General asserts, however, that he need not avail himself of the statute because he possesses both a common law right and an "inherent" right to appeal.

The Attorney General maintains that, in civil actions, a nonparty may appeal from a court judgment if the nonparty has a direct, immediate and substantial interest in the subject matter which would be prejudiced by the judgment or benefited by its reversal. (See *In re Estate of Tomlinson* (1976), 65 Ill. 2d 382, 359 N.E.2d 109.) In *Tomlinson*, the supreme court stated that, prior to the Civil Practice Act, a nonparty had no statutory right to appeal but could prosecute a writ of error by showing that he would be injured by the judgment or would be benefited by its reversal. This procedure was retained by Supreme Court Rule 301 (87 Ill. 2d R. 301), which provides that "[a]ll rights that could have been asserted by appeal or writ of error may be asserted by appeal."

The Attorney General cites no authority or analogous supreme court rule which makes the writ of error procedure applicable to administrative proceedings. Furthermore, recognition of a writ of error appeal from Board decisions would undermine the supreme court's decision in *Lake County Contractors Association*. There, the court stated that, under section 41 of the Environmental Protection Act, one who seeks review must be adversely affected by the order of the Board *and* must have been a party to the Board proceedings. The case suggests that the writ of error theory of review is not applicable to review of Pollution Control Board orders since, even if a person's interests were adversely affected by a Board order, he cannot obtain judicial review of the order unless he was a party to the Board proceedings. We are not willing to allow the Attorney General in through the back door when the supreme court has closed the front.

Finally, the Attorney General argues that the strong public interest in maintaining a healthful environment endows him with a "unique right" to appeal the Board's decision as a nonparty. The only authority cited in support of this argument is *People ex rel. Scott v. Illinois Racing Board* (1973), 54 Ill. 2d 569, 301 N.E.2d 285. In *Illinois Racing Board*, the Attorney General appealed from the Board's decision to grant racing licenses to four racing associations. The Racing Board argued that the Attorney General lacked standing to appeal its decision because he had not been a party to the Board's proceedings and was not adversely affected by the Board's decision. The supreme court noted that the Attorney General had participated in the proceedings before the Board but stated that there were more persuasive grounds to allow his appeal. The court said:

"The strong public interest in maximizing both revenue to the State and to public charities is apparent, as is the necessity of requiring strict observance by public officials of the statutory scheme in furtherance of these objectives. That necessity, which reflects the public interest in maintaining the integrity of certain types of public activities, including the pari-mutuel betting present here, which are peculiarly susceptible to subversive influences, permits the Attorney General to initiate the judicial review of the Racing Board action here sought, for the nature of that activity requires the special vigilance of the Attorney General as well as that of those executive agencies charged with its regulation." 54 Ill. 2d 569, 576, 301 N.E.2d 285, 288.

The facts of *Illinois Racing Board* provide a unique context for the quoted language. Testimony at the hearing before the Board showed that William Miller, an owner of substantial interests in two of the racing associations, was under indictment in Federal court on charges of perjury, bribery, mail fraud, and income tax evasion in connection with certain race track transactions. The testimony also showed that Lewis Jacobs and his family owned substantial interest in the other two racing associations. The Jacobs family owned and operated a corporation which had recently been convicted of conspiracy and interstate transportation in aid of racketeering enterprises.

■ There is no need to extend the doctrine of *Illinois Racing Board* to the present case. We see no indication that the Environmental Protection Agency's issuance of permits is "peculiarly susceptible to subversive influences." Furthermore, while we acknowledge the strong public interest in a healthful environment (see Ill. Const. 1970, art. XI, sec. 1), the protection of this interest does not require the Attorney General's presence in this case. The Environmental Protection Act provides other safeguards for this interest. Section 42 of the Act authorizes the Attorney General to institute a civil action for an injunction to restrain violations of the Act. (Ill. Rev. Stat. 1979, ch. 111½, par. 1042.) Section 43 authorizes the Attorney General to initiate a civil action for an immediate injunction to halt any discharge or other activity which causes or contributes to circumstances of substantial danger to the environment. (Ill. Rev. Stat. 1981, ch. 111½, par. 1043.) Section 30 directs the Agency to conduct investigations upon the request of the Board or upon receipt of information concerning an alleged violation of the Act. Ill. Rev. Stat. 1979, ch. 111½, par. 1030.

We conclude that the Attorney General has no standing to obtain appellate review of the Board's decision. His appeal is dismissed.

## II

Petitioners, having been parties to the Board proceedings, are properly before this court. They challenge first the procedures employed by the Agency in its decision-making process with regard to the issuance of Pioneer's permit. Their argument focuses on section 39(c) of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1039(c)), which provides:

> "Immediately upon receipt of a request for a permit or supplemental permit for a refuse disposal facility, the Agency shall notify the State's Attorney and the Chairman of the County Board of the county in which the facility is located and each member of the General Assembly from the legislative district in which that facility is located and to the clerk of each municipality any portion of which is within 3 miles of the facility, prior to the issuance of a permit to develop a hazardous waste disposal site, the Agency shall conduct a public hearing in the county where the site is proposed to be located."

Petitioners argue that the Agency's decision to issue a permit must be based exclusively on a record of the public hearing which the Agency is required to conduct prior to the issuance of a permit. They maintain that the Agency erred by considering material submitted to it by Pioneer prior to the hearing which was not presented at the hearing and material submitted by Pioneer after the hearing.

Petitioners' contention finds no support in the Environmental Protection Act. Section 39(a) of the Act directs the Agency to "adopt such procedures as are necessary to carry out its duties under this Section." (Ill. Rev. Stat. 1979, ch. 111½, par. 1039(a).) Among the Agency's duties under section 39 are to issue a permit "upon proof by the applicant that the facility *** will not cause a violation of [the] Act" and to conduct a public hearing "prior to the issuance of a permit." (Ill. Rev. Stat. 1979, ch. 111½, par. 1039(a), (c).) Nothing in the Act requires the Agency's decision to be based on a record of the public hearing. On the contrary, section 39(c) only requires a public hearing "prior to the issuance" of a permit. Since the Agency is not directed to conduct a public hearing if it denies a permit, section 39(c) implies that the Agency's decision to grant or deny a permit precedes the public hearing.

Furthermore, not only is there no statutory language requiring the Agency to base its decision solely on a record of the public hearing, there is no requirement that a record of the hearing be kept. There are several examples within the Environmental Protection Act which show that when the General Assembly intends a record to be

kept at a hearing, it so states. Section 32 of the Act, which describes the procedures to be followed at hearings before the Board upon complaints against alleged violators of the Act, states: "All testimony taken before the Board shall be recorded stenographically." (Ill. Rev. Stat.1979, ch. 111½, par. 1032.) The procedural requirements of section 32, which include the keeping of a record, are made applicable to hearings before the Board on a permit applicant's petition to obtain review of the Agency's denial of a permit. (See Ill. Rev. Stat. 1979, ch. 111½, par. 1040(a).) Finally, a recent amendment to the Act requires the local county board or governing body to conduct at least one public hearing in relation to the local authority's approval or disapproval of the site location for new regional pollution control facilities. (See Ill. Rev. Stat. 1981, ch. 111½, par. 1039.1, as added by Pub. Act 82–682.) The section requires that "[t]he public hearing shall develop a record sufficient to form the basis of appeal of the decision." (Ill. Rev. Stat. 1981, ch. 111½, par. 1039.1(d).) While we encourage the keeping of a record of the public hearing under section 39(c), the Act does not require it. Since the Act does not require a record of the hearing, it obviously does not require the Agency's decision to issue a permit to be based on such a record.

Another factor mitigating against petitioners' contention is that the Agency had been authorized to issue permits without public hearings for over nine years prior to the effective date of the amendment requiring a public hearing. The provisions of section 39 which direct the Agency to issue a permit upon certain proof by the applicant and to adopt procedures necessary to carry out its duties under section 39 have remained unchanged since they became effective in July 1970. The amendment to section 39 requiring a public hearing took effect in January 1980. Consequently, the Agency's decision-making procedures governing permit applications have, for at least nine years, not included public hearings. It is inconceivable that the General Assembly, by merely adding the phrase "prior to the issuance of a permit to develop a hazardous waste disposal site, the agency shall conduct a public hearing in the county where the site is proposed to be located," intended to completely overhaul the Agency's decision-making process by requiring its decision to now be based solely on a record of the public hearing.

Finally, we note that the public hearing requirement of section 39(c) was added by the same amendment which provided for third-party appeals to the Board when the Agency issued a permit. Prior to this amendment (Pub. Act 81–856) third parties had no right to obtain review by the Board of the Agency's issuance of a permit. (See

*Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 387 N.E.2d 258.) It is not unreasonable to conclude that the purpose of the public hearing of section 39(c), in addition to providing a forum for public comment, is to provide interested persons with notice of the Agency's proposed decision to issue a permit and the nature of the proposed facility so that they may knowledgeably exercise their newly created right to obtain review before the Board to contest the issuance of the permit.

We hold that the Environmental Protection Act does not require the Agency's decision to issue a permit to be based solely on a record of the public hearing required by section 39(c) of the Act.

### III

Notwithstanding section 39(a), which specifically directs the Agency to adopt its own procedures to carry out its duties under section 39, petitioners argue that the procedures applicable to the public hearing required by section 39(c) are the "contested case" provisions of the Illinois Administrative Procedure Act (APA). (Ill. Rev. Stat. 1981, ch. 127, par. 1016(a).) Section 16(a) of the APA provides that "[w]hen any licensing is required by law to be preceded by notice and opportunity for hearing, the provisions of this Act concerning contested cases shall apply." All parties agree that the Agency's permitting process is "licensing" within the meaning of the APA. (See sections 3.04 and 3.05 which define "license" and "licensing" (Ill. Rev. Stat. 1981, ch. 127, pars. 1003.04, 1003.05).) Petitioners argue that since section 39(c) of the Environmental Protection Act requires some kind of notice and a public hearing, the contested case provisions are applicable to the public hearing through section 16(a) of the APA.

We find, however, that the notice required under section 39(c) of the Environmental Protection Act is not the type of notice which triggers section 16(a) and the contested case provisions of the APA. Section 10(a) of the APA specifies the requirements of the "notice" in contested cases. It provides, *inter alia,*:

> "In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice. Such notice *** shall include:
>
> 1. a statement of the time, place and nature of the hearing."
> (Ill. Rev. Stat. 1981, ch. 127, par. 1010(a).)

This section clearly refers to notice *of the hearing*. We conclude that this is the same type of notice referred to in section 16(a) of the APA, *i.e.*, notice of the hearing.

The notice required by section 39(c) of the Environmental Protec-

tion Act is not of the public hearing. The section requires the Agency to notify certain persons "[i]mmediately upon receipt of a request for a permit." This notice merely informs the recipients that a request for a permit has been received by the Agency and must be sent regardless of whether a public hearing is held. (The Agency is not required to hold a public hearing if it refuses to grant a permit.)

It is also noteworthy that the notice provision of section 39(c) was added in 1977, two years before the requirement for a public hearing. This strongly suggests that the only relation between the notice and hearing provisions of section 39(c) is that they appear in the same sentence.

■ We hold, therefore, that the contested case provisions of the APA are not applicable to public hearings required by section 39(c) of the Environmental Protection Act.

IV

Petitioners argue that the procedures adopted by the Agency for the public hearing violated their constitutional rights to due process. Although the Agency's procedures provided interested persons with the opportunity to appear, present evidence and cross-examine witnesses, petitioners claim they were entitled to a trial-type hearing at which all evidence relied on by the Agency must have been presented at the hearing and exposed to cross-examination and rebuttal.

Illinois courts have held that due process does not require either the Board or the Agency to grant third parties a hearing on the allowance of permits. In *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 387 N.E.2d 258, the Agency issued a sanitary landfill permit to Landfill, Inc. (Landfill). Certain third parties filed an application for review before the Pollution Control Board pursuant to a Board procedural rule. (At the time, the Environmental Protection Act did not authorize third-party appeals to the Board from the Agency's issuance of a permit.) Landfill filed an action in the circuit court challenging the validity of the Board's rule permitting third-party appeals. The circuit court held that the rule was authorized by the Environmental Protection Act and dismissed Landfill's action.

The Board argued on appeal that the allowance of a permit could impinge upon third parties' constitutional rights to a healthful environment and could threaten property rights and, therefore, third parties were entitled by due process to a hearing on the allowance of the permits. In rejecting this argument, the supreme court stated:

"The constitutional argument is without merit in light of the statutorily established mechanism for persons not directly in-

volved in the permit-application process to protect their interests without embroiling the Board in an examination of the Agency's permit-granting procedure." 74 Ill. 2d 541, 559, 387 N.E.2d 258, 265.

In *Village of South Elgin v. Waste Management of Illinois, Inc.* (1978), 62 Ill. App. 3d 815, 379 N.E.2d 349, the court held that due process did not require the Agency to hold an adversarial hearing prior to the issuance of a developmental or operational permit for a sanitary landfill.

■ Since petitioners were not entitled to any hearing under the United States or Illinois constitutions, they certainly were not entitled to a trial-type hearing. We hold that the procedures adopted by the Agency for the public hearing did not violate petitioners' rights to due process.

## V

Petitioners argue that the Board erred in admitting new evidence during its proceedings in review of the Agency's decision. Section 40(b) of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1040(b)) provides that a third party may petition the Board to contest the issuance of a permit by the Agency. This section states that "the Board shall hear the petition in accordance with the terms of subsection (a) of this Section and its procedural rules governing denial appeals, *such hearing to be based exclusively on the record before the Agency.*" (Emphasis added.) Ill. Rev. Stat. 1979, ch. 111½, par. 1040(b).

Prior to the Board's first hearing, Pioneer filed a motion *in limine* suggesting that the proceedings during the Board's hearing be limited to oral arguments. Petitioners objected to this motion and claimed that they were entitled to introduce evidence which should have been in the record before the Agency but was omitted. The Board denied Pioneeer's motion *in limine* and granted petitioners' request to introduce evidence not contained in the record before the Board. The Board recognized that its review was to be based exclusively on the record before the Agency; however, petitioners were contending that the Agency had not transmitted the entire "record" to the Board. The Board, therefore, granted petitioners the opportunity to show that the Agency had considered material outside of the record it transmitted to the Board. Petitioners now claim that the Board erred in considering testimony elicited at the Board hearing and violated section 40(b) which limits the Board's review to the record before the Agency.

■ In *Meyer v. Polivat* (1957), 13 Ill. App. 2d 491, 492, 142 N.E.2d 747, 748, this court stated: "It is well settled law that a party cannot complain of errors which he has committed, invited, or induced the court to make, or to which he has consented." This principle is applicable to the present case. Petitioners requested the introduction of new evidence and cannot now complain that the Board erred in considering this evidence. Furthermore, although petitioners' claim that they were prejudiced by the Board's consideration of additional evidence, they have not identified what this evidence was or how they have been prejudiced by it. It is not the duty of this court to scrutinize the record of proceedings before the Board in search of testimony which might be prejudicial to petitioners.

## VI

Petitioners argue that the issuance of the permit violated section 21(g) of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1021(g)) in that the village of Naplate rescinded its approval of the location of the site and that the site was located within 1,000 feet of existing private wells. These issues were raised by the Attorney General, who was representing the Agency, in *Pioneer Processing, Inc. v. Environmental Protection Agency* (1982), 111 Ill. App. 3d 414. This court concluded that section 21(g) had not been violated. Petitioners raise no arguments which have not been already considered by this court in *Pioneer Processing* and, therefore, we adopt the reasoning and conclusions of that opinion.

## VII

Pioneer, in its cross-appeal, argues that the Board erred by finding that Pioneer could not deem its permit issued under the 90-day limitation for Board action under section 40(a) of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1040(a)). Section 40(a) allows a permit applicant to petition the Board for a hearing when the Agency refuses to grant a permit and provides that "[i]f there is no final action by the Board within 90 days, petitioner may deem the permit issued under this Act."

■ The present proceeding was not brought under section 40(a). Petitioners sought review under section 40(b), which authorizes third parties to petition the Board for review of an agency's decision granting a permit. Section 40(b) does not specifically state a time limitation for final action by the Board. However, the section provides that "the Board shall hear the petition in accordance with the terms of subsection (a) of this Section and its procedural rules governing denial ap-

peals." We conclude that this provision makes the 90-day time limitation of section 40(a) applicable to section 40(b).

The only issue raised by the parties is whether the 90-day limitation was tolled by the preliminary injunction against the Board proceedings issued by the La Salle County circuit court. Pioneer argues that the 90-day limitation cannot be tolled but can only be waived by the permit applicant. In support of this proposition, Pioneer cites *Marquette Cement Manufacturing Co. v. Pollution Control Board* (1980), 84 Ill. App. 3d 434, 405 N.E.2d 512.

In *Marquette*, a cement manufacturer applied for an operating permit from the agency. The agency denied the permit application and the company petitioned for a hearing before the Board. Due to scheduling difficulties of an "unspecified nature" the hearing was set for a date which was more than 90 days after the day the company's petition for a hearing was filed. The Board sought a waiver of the 90-day limit from the company but the company refused to grant a waiver. Six days before the 90-day limit expired, a majority of the Board voted to dismiss the company's petition without prejudice on the grounds that no hearing had been held and the company's petition failed to conform with a procedural rule of the Board.

The appellate court determined that the Board's dismissal of the company's petition was a transparent attempt to circumvent the statutory requirement that a final decision be made within 90 days. The court stated, "Marquette had a right to a hearing and to a final decision within 90 days from filing the petition, absent their own delay or other extraordinary circumstances not present in this case." (84 Ill. App. 3d 434, 439, 405 N.E.2d 512, 516.) The court reversed the Board's decision and held that the permit was deemed to have been issued 90 days after the petition for a hearing was filed.

■ In the present case, Pioneer does not contend that the Board's failure to take final action within 90 days was an attempt to circumvent the requirements of section 40 of the Act. The record indicates that the Board was conscientious in attempting to comply with the 90-day limit. Furthermore, present in this case are what the court in *Marquette* characterized as "extraordinary circumstances." In order to comply with the 90-day limit, the Board would have had to violate the circuit court's preliminary injunction. We hold that the preliminary injunction, while it was in effect, tolled the 90-day limitation for Board action.

■ The Board entered a final order within the 90-day limitation as tolled by the preliminary injunction, and, therefore, Pioneer was not entitled to deem its permit issued under section 40 of the Envi-

ronmental Protection Act.

The appeal of the Attorney General in cause No. 82—180 is dismissed.

The order of the Pollution Control Board in cause No. 82—190 is affirmed.

WEBBER, P.J., concurs.

JUSTICE TRAPP, concurring in part and dissenting in part:

In *Pioneering Processing, Inc. v. Environmental Protection Agency* (1982), 111 Ill. App. 3d 414, I dissented from the determination upon review of declaratory judgment that the village of Naplate was bound by a finding of the trial court that that village could not rescind a consent to the issue of a permit for a hazardous waste dump. There the village was not a party in declaratory judgment. In the light of the facts that the Environmental Protection Agency, an asserted representative of the village, had issued a permit, had taken no step to rescind or modify it, and had written that the Agency would express no view upon the issue of rescission, it did not seem fair or appropriate to hold that the Agency was a proper and qualified representative who could bind the village.

In this case the village of Naplate joins in seeking administrative review of the order of the Pollution Control Board. In this record, that order discloses that there was no administrative decision upon the issue of rescission by the village of its prior consent. The relevant context of the order includes:

"Section 21(g) of the Act prohibits a hazardous waste disposal site located within a mile and a half of a municipality in a county of 225,000 or more without a waiver from the governing body, or within a thousand feet of a private well or the existing source of a public water supply.

The Village of Naplate, therefore, had to have waived the requirement for a permit to be granted, and it did in fact execute such waiver. There is no evidence in the record before the Board that it acted to rescind that waiver prior to the Agency's decision to grant the permit (see R. 531—537). As noted above, the scope of the Board's review of permit appeals is limited to the *record before the Agency* at the time of decision. Therefore, *any later rescission is not presently before the Board and the Board need not reach the question as to what effect a rescission*

subsequent to the granting of developmental permit would have on the granting of an operating permit *after a purported rescission.*" (Emphasis added.)

By reason of the absence of an administrative order I would dismiss the proceedings for administrative review by the village of Naplate.

I concur with the opinion in its other aspects.