(No. 58083.—
(No. 58238.—
(No. 58239.—

PIONEER PROCESSING, INC., *et al.*, Appellees, v. THE ENVIRONMENTAL PROTECTION AGENCY, Appellant.—THE COUNTY OF LA SALLE *ex rel.* GARY PETERLIN *et al.*, Appellants, v. THE POLLUTION CONTROL BOARD *et al.*, Appellees.— THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. THE POLLUTION CONTROL BOARD *et al.*, Appellees.

*Opinion filed March 23, 1984.—Rehearing denied June 4, 1984.*

RYAN, C.J., took no part.

Neil F. Hartigan, Attorney General, of Springfield (Charles W. Murdock, Deputy Attorney General, and Russell R. Eggert and H. Alfred Ryan, Assistant Attorneys General, of Chicago, and A. L. Zimmer, Assistant Attorney General, of Springfield, of counsel), for appellant.

Thomas J. Immel and Lee K. Zelle, of Springfield, for appellees.

Gary L. Peterlin, State's Attorney, of Ottawa (Joseph V. Karaganis, Special Assistant State's Attorney, of Chicago, of counsel), for appellants.

Thomas J. Immel and Lee K. Zelle, of Springfield, for appellees.

Neil F. Hartigan, Attorney General, of Springfield (Charles W. Murdock, Deputy Attorney General, and Russell R. Eggert and H. Alfred Ryan, Assistant Attorneys General, of Chicago, of counsel), for the People.

Thomas J. Immel and Lee K. Zelle, of Springfield, for appellees.

JUSTICE CLARK delivered the opinion of the court:

This appeal involves three cases. Two of the cases were consolidated at the appellate court level and all three were consolidated in this court. In No. 58083, Pioneer Processing, Inc. (Pioneer), brought an action for declaratory judgment against the Environmental Protection Agency (the Agency) for a determination of its rights to develop a hazardous-waste-disposal site located in Ottawa Township, La Salle County. On March 2, 1982, the circuit court of Sangamon County entered its final judgment order following a hearing on the merits. The trial court held that section 21(g) of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1021(g)), which prohibits disposal within 1,000 feet of a private well, was clear on its face and prohibited plaintiffs from the location of any part of a hazardous-waste-disposal site within such limit. In regard to an area of land within the 177 acres called the "Naplate segment," the court held that the municipality, which granted its approval, could not rescind its consent since Pioneer had substantially relied on that authority. The court found that Pioneer had substantially changed its position in reliance on the village of Naplate's resolution which gave the municipality's consent.

Pioneer appealed that portion of the trial court's order prohibiting the use of that area of the site that was within 1,000 feet of the off-site private wells, and the Agency cross-appealed from the court's finding that Pio-

neer had substantially relied upon the consent of the village of Naplate in locating the site within the 1½ miles of the municipal boundaries. The Appellate Court, Fourth District, held that the trial court was correct in its decision that section 21(g) was unambiguous in providing a 1,000-foot barrier, but disagreed with its finding that the word "site" included any portion of the area whether or not hazardous wastes were disposed of within the 1,000 feet (111 Ill. App. 3d 414, 419). The appellate court therefore reversed that part of the trial court's decision prohibiting any part of the permitted site to be located within 1,000 feet of an off-site public well. The appellate court also held that section 21(g) does not prohibit the village of Naplate from withdrawing its approval to the siting of the hazardous-waste-disposal site within 1½ miles of its corporate limits, but that the trial court "correctly noted that the doctrine of equitable estoppel can be applied against a municipality to prevent it from creating a situation where it would be inequitable or unjust to permit it to negate what it has done or permitted to be done." (111 Ill. App. 3d 414, 421.) The appellate court held that the trial court's determination that Pioneer had substantially relied upon the resolution to its detriment was entitled to deference and would not be disturbed because it was not contrary to the manifest weight of the evidence. (111 Ill. App. 3d 414, 424.) Lastly, the appellate court did not agree with the Agency's assertion that the appeal should be dismissed because the action did not present an actual controversy between all the necessary parties. (111 Ill. App. 3d 414, 424-26.) Although the appellate court did find that Naplate was a necessary party to the suit and should have been made a party defendant, it held that it was not necessary to dismiss the suit, because the interests of Naplate and the Agency were sufficiently similar to conclude that Naplate's interests would be protected.

111 Ill. App. 3d 414, 426.

In a partial concurrence and partial dissent, one justice stated that, while he concurred in the determination of the majority that the village of Naplate was a necessary party, he did not agree with the majority's conclusion that the interest of the village so coincided with the Agency upon the issue of the authority of the village to withdraw its consent that there could be an appropriate representation of the village by the Agency. He stated:

> "The records of this court disclose that the village of Naplate is a party to an appeal now argued and submitted to this court, which includes the same issue of the revocation of the village's consent. The application of the doctrine of representation in this proceeding effectively creates a collateral estoppel which prevents the village from having its day in court in that appeal. One notes that in addition to being omitted as a party to this declaratory judgment action, this action was brought in Sangamon County. The village is situated in La Salle County, some 100 miles distant. It is doubtful that the most extraordinary diligence on the part of the village could discover the present action for purposes of seeking intervention." 111 Ill. App. 3d 414, 427 (Trapp, J., concurring in part and dissenting in part).

The Agency has appealed from the judgment of the appellate court, and we have granted its petition for leave to appeal pursuant to our Rule 315(a) (87 Ill. 2d R. 315(a)).

The other two cases that were consolidated in this appeal were also consolidated at the appellate court level. The two appeals were brought directly to the Appellate Court, Third District, from an order of the Illinois Pollution Control Board pursuant to section 41 of the Environmental Protection Act, which provides for a direct appeal to the appellate court (Ill. Rev. Stat. 1979, ch. 111½, par. 1041). The Board affirmed the Agency's issuance of a permit for the construction of Pioneer's hazardous-waste-disposal site. One of the appeals was brought by the Attorney

General of the State of Illinois, and the other was brought by the County of La Salle, the village of Naplate, the city of Ottawa, the village of Utica, the Ottawa township board of trustees, the town of Ottawa, Residents Against Polluted Environment, Rosemary Sinon, Marie Madden, and Joan Benya Bernabei. We will refer to these parties as "petitioners," as did the appellate court.

The named appellees in both of the cases are the Pollution Control Board (the Board), the Environmental Protection Agency (the Agency), William Clarke, Pioneer Development, Pioneer Processing, Inc., and Wilmer and Edith Brockman. We will call William Clarke, Pioneer Development and Pioneer Processing, Inc., "Pioneer."

In the case brought by the Attorney General, No. 58239 in this court, the appellate court determined that the Attorney General had not participated in the proceedings before the Agency or the Board. His first involvement with the case was when he filed a notice of appeal from the Board's decision in the appellate court. The appellate court held that the Attorney General had no statutory or common law right to obtain judicial review of the Board's decision and dismissed his appeal. (113 Ill. App. 3d 282, 292-93.) The Attorney General thereafter filed a petition for leave to appeal with this court, and we granted his petition pursuant to our Rule 315(a) (87 Ill. 2d R. 315(a)).

In the third case, No. 58238, petitioners challenged the procedures employed by the Agency in regard to the issuance of Pioneer's permit. Petitioners maintained that the Agency's decision to issue a permit should have been based exclusively on the record of the public hearing which it was required to conduct prior to the issuance of the permit, and that the Agency improperly considered materials submitted to it by Pioneer before and after the public hearing. The appellate court rejected petitioners' argument and held that "the Environmental Protection Act does not require the Agency's decision to issue a permit to be based solely

on a record of the public hearing required by section 39(c) of the Act." 113 Ill. App. 3d 282, 296.

Next, the petitioners argued that the procedures applicable to the public hearing required by section 39(c) of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1039(c)) were the "contested case" provisions of the Illinois Administrative Procedure Act (APA) (Ill. Rev. Stat. 1979, ch. 127, par. 1016(a)). The appellate court held that "the contested case provisions of the APA [were] not applicable to public hearings required by section 39(c) of the Environmental Protection Act." 113 Ill. App. 3d 282, 297.

The third issue raised by petitioners in the appellate court was whether the procedures adopted by the Agency for the public hearing violated their constitutional rights to due process because they should have been afforded a trial-type hearing at which all evidence relied on by the Agency should have been presented and exposed to cross-examination and rebuttal. The appellate court held that, "[s]ince petitioners were not entitled to any hearing under the United States or Illinois constitutions, they certainly were not entitled to a trial-type hearing" and "the procedures adopted by the Agency for the public hearing did not violate petitioners' rights to due process." 113 Ill. App. 3d 282, 298.

Petitioners' fourth issue was whether the Board erred in admitting new evidence during its proceedings in review of the Agency's decision. Prior to the Board's first hearing, Pioneer filed a motion *in limine* suggesting that the proceedings before the Board be limited to oral arguments. Petitioners objected to Pioneer's motion and claimed that they were entitled to introduce evidence which should have been in the record before the Agency but was omitted. The Board denied Pioneer's motion and allowed petitioners to introduce the evidence even though the Board was aware that its review was to be based exclusively on the record before the Agency. The Board made the exception because

it wanted to provide the petitioners with the opportunity to show that the Agency had considered materials outside of the record that it had transmitted to the Board. The appellate court held that, since petitioners had requested the introduction of the new evidence, they could not now complain that the Board erred in considering it, and also that although petitioners claimed they were prejudiced by the Board's consideration of this additional evidence, they never identified what evidence or how they were prejudiced by it. The court refused to scrutinize the record of proceedings before the Board to search for testimony which might be prejudicial to petitioners. 113 Ill. App. 3d 282, 298-99.

Lastly, petitioners argued that the issuance of the permit violated section 21(g) of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch.. 111½, par. 1021(g)) in that the village of Naplate rescinded its approval of the location of the site within 1,000 feet of existing private wells. The appellate court held:

"These issues were raised by the Attorney General, who was representing the Agency, in *Pioneer Processing, Inc. v. Environmental Protection Agency* (1982), 111 Ill. App. 3d 414. This court concluded that section 21(g) had not been violated. Petitioners raise no arguments which have not been already considered by this court in *Pioneer Processing* and, therefore, we adopt the reasoning and conclusions of that opinion." 113 Ill. App. 3d 282, 299.

In its cross-appeal, Pioneer argued that the Board erred by finding that Pioneer could not deem its permit issued, since the 90-day limitation period for Board action under section 40(a) of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1040(a)) had expired. Pioneer reasoned that, since section 40(a) allows a permit applicant to petition the Board for a hearing when the Agency refuses to grant a permit and still provides that "[i]f there is no final action by the Board within 90 days, petitioner

may deem the permit issued under this Act" (Ill. Rev. Stat. 1979, ch. 111½, par. 1040(a)), the 90-day limitation is not tolled during the pendency of the hearing. The appellate court held that the Board was conscientious in attempting to comply with the 90-day limit and, because there were extraordinary circumstances [a preliminary injunction], the 90-day limitation was tolled. The court found that the Board entered a final order within the 90-day limitation as tolled by the preliminary injunction and, therefore, Pioneer was not entitled to deem its permit issued under section 40 of the Environmental Protection Act. 113 Ill. App. 3d 282, 300-01.

The same justice who dissented in part in *Pioneer Processing, Inc. v. Environmental Protection Agency* (1982), 111 Ill. App. 3d 414, 426-27 (Trapp, J., concurring in part and dissenting in part), also dissented in part in this appeal. He reiterated his belief that the Agency should not have been held to be a proper and qualified representative for the village of Naplate in that case. He believed that, since the village was not a party to the declaratory judgment action, it should not have been bound by the decision of the trial court that the village could not rescind its consent to the issuance of the permit.

He further explained his belief that the village of Naplate should not be allowed to seek administrative review in the appeal in the instant case because the administrative order discloses that there was no administrative decision upon the issue of rescission by the village of its prior consent. He quotes from the order of the Board wherein it is stated: " 'any later rescission is not presently before the Board and the Board need not reach the question as to what effect a rescission subsequent to the granting of the developmental permit would have on the granting of an operating permit after a purported rescission.' " (113 Ill. App. 3d 282, 301-02 (Trapp, J., concurring in part and dissenting in part).) He concludes by stating that, by reason

of the absence of an administrative order dealing with the village's rescission, he would dismiss the proceeding for administrative review by the village of Naplate. 113 Ill. App. 3d 282, 302 (Trapp, J., concurring in part and dissenting in part).

The Attorney General and the petitioners have filed petitions for leave to appeal the decision of the appellate court, and we have granted their petitions pursuant to our Rule 315(a) (87 Ill. 2d R. 315(a)), and consolidated all three cases in this court.

A summary of the events which lead up to each of these appeals is necessary. Facts which are unique to each appeal will be discussed in the context of the issues raised in that particular case, but the common facts are as follows. On July 1, 1980, Pioneer and others filed an application with the Agency seeking a modification of an existing permit to develop a 177-acre site in La Salle County. The existing permit authorized the development of a sanitary landfill, and Pioneer's application sought authorization to develop a hazardous-waste-disposal site. Two tracts of land within the 177-acre parcel, the "Naplate segment" and the "well segment," were the subject of a dispute between the parties.

On October 20, 1980, the village trustees of Naplate enacted an enabling resolution, assenting to the location of the site within 1½ miles of the corporate limits of the village of Naplate.

The Agency scheduled a public hearing to be held in Ottawa on November 21 and 22, 1980, pursuant to section 39(c) of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1039(c)). The public notice of the hearing set forth the procedures that would be followed during the hearing. It stated:

"The public hearing will be divided into two parts: the day sessions will be reserved for an adversary hearing where legal counsel or other registered representatives of

Pioneer Properties or an opposition group may present expert witnesses who will be subject to cross-examination by the other side. The evening session will be reserved for oral comments from individual local residents. Individuals commenting during the evening session will be limited to 7 minutes each, but they will not be subject to cross-examination. In addition, written comments for the record can be submitted during all public hearing sessions and for 14 days after November 22, 1980. Oral and written testimony will be accepted on the appropriateness of the Pioneer Properties site for the treatment and disposal of solid waste, including special and hazardous waste."

On November 21, 1980, the public hearing began with a presentation by Pioneer. After Pioneer described the proposed project, its personnel and experts were cross-examined by attorneys for La Salle County, the village of Ottawa, Ottawa township, several landowners in La Salle County, and other interested parties. On November 21, 1980, during the evening session, 29 people made public comments. On November 22, 1980, Michael Heaton, an attorney representing Rosemary Sinon, cross-examined Pioneer's witnesses and put his own expert witnesses on the stand.

At the close of the hearing on November 22, 1980, the hearing officer announced that the record would remain open for written comments until December 12, 1980. Pioneer submitted post-hearing materials which included responses to the testimony of Heaton's experts, citizens' statements, and the cross-examination of Pioneer's experts. Heaton submitted material which included resolutions in opposition to the permit from the Ottawa township board and the La Salle county board. Petitions in opposition to the permit were filed, and numerous citizens and local governmental units made post-hearing submissions.

On December 22, 1980, the Agency issued a permit to Pioneer. The permit authorized the construction of the site

for hazardous-waste disposal, but prohibited actual operation of the site without an operating permit from the Agency. During the evening of December 22, 1980, the day the permit was issued, the village board of Naplate held a special meeting and rescinded its resolution which granted approval of the site.

In a letter dated January 20, 1981, Pioneer requested an opinion from the Agency on the effect of the village's resolution. The Agency replied that no opinion would be given and that Pioneer would be proceeding at its own risk.

On January 26, 1981, petitioners filed a petition for review and revocation of the permit with the Pollution Control Board. The petitioners alleged that the Agency had failed to perform its duty to protect the public health and environment, that the proceedings before the Agency violated the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1979, ch. 127, par. 1001 *et seq.*), and that their constitutional rights to due process had been violated. After the Board appointed a hearing officer, a hearing was scheduled in Ottawa on April 6, 1981. Pioneer filed a motion *in limine* prior to the hearing and requested the Board to specify the procedures to be followed during the hearing before the Board. Pioneer suggested that the hearing be limited to the oral arguments of the parties, since section 40(b) of the Environmental Protection Act requires the Board hearing to be based exclusively on the record which was before the Agency (Ill. Rev. Stat. 1979, ch. 111½, par. 1040(b)).

Petitioners objected to Pioneer's motion because they alleged that the record that was submitted to the Board did not include all the evidence that was before the Agency. The Board, in an order, stated that if evidence outside the Agency's record was offered during the hearing, the hearing officer would, on a case-by-case basis, rule on its admissibility. The Board further stated that a reason-

able time during the hearing would be allowed for public comment. It held that Pioneer could deem the permit issued unless the Board ruled on the petition within 90 days of its filing pursuant to section 40(a) of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1040(a)).

On March 20, 1981, 17 days before the Board hearing was scheduled to take place, petitioners Rosemary Sinon and La Salle County filed a declaratory judgment action in the circuit court of La Salle County. They sought a declaratory judgment that Pioneer's permit was void and a preliminary injunction prohibiting Pioneer from "undertaking, allowing or causing in any manner, directly or indirectly, any activity to develop a hazardous waste landfill" pursuant to the permit. They alleged specifically that the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1979, ch. 127, par. 1001 *et seq.*) applied to the hearings that were held by the Agency, that they were parties with standing under the APA, and that the Act was violated by Pioneer's December 12, 1980, *ex parte* submission to the Agency. They believed that under the APA they should have been given the opportunity to examine and rebut Pioneer's submission, that they were denied that right, and that since the Agency failed to make findings of law and fact as required by the APA, they were denied due process of law. On the same day the suit was filed, March 20, 1981, a hearing was held on the motion for a preliminary injunction. The circuit court of La Salle County granted the preliminary injunction, finding that the APA was applicable, that the petitioners' due process rights were violated, and that, because of the violations of the APA, Pioneer's permit was void. The court denied Pioneer's motion to vacate the order and for a stay and granted petitioners' motion to enforce the preliminary injunction. On March 25, 1981, Pioneer filed an answer denying all the allegations in the complaint.

On April 2, 1981, four days before the Board hearing

was to take place, a conference was held in Ottawa by the Board's hearing officer. A representative of the petitioners, Russell Eggert, informed the hearing officer of the preliminary injunction and suggested that Pioneer would violate the order of the circuit court if it participated in the Board hearing on April 6, 1981. The hearing officer stated that the hearing would be held at 9:30 a.m. on April 6, 1981, as scheduled.

On April 3, 1981, the petitioners filed a motion to enforce the preliminary injunction. A hearing on the motion was set for 9 a.m. on April 6, 1981. After a hearing on the motion, the circuit court of La Salle County ordered all parties to refrain from proceeding in any way before the Board, and held that because the permit was void, no proceeding should go forward until further order of the court.

On April 6, 1981, at 10:05 a.m., the hearing officer opened the hearing of the Board. An attorney representing Ottawa Township was present and told the hearing officer that the Board hearing had been enjoined and that a written order to that effect was being prepared. The hearing officer stated that he would conduct the hearing as planned because neither he nor the Board was a party to the circuit court proceedings nor had either received any formal notice of the proceedings. The hearing officer noted that petitioners were not making a formal presentation to oppose the permit and therefore stated that he would hear public comments. Only one person made a statement, and the hearing was terminated at 10:20 a.m.

Later that morning, at 11:10 a.m., the hearing officer reopened the record to allow an attorney for petitioners to deliver the enforcement order obtained from the circuit court and to make the statement that petitioners would not proceed with the administrative proceedings. The record was again closed at 11:16 a.m. On April 16, 1981, the Board entered an order staying any further proceedings until there would be a final adjudication on the injunction

by the State courts. The Board considered the statutory 90-day limitation for its final decision to be tolled pending the appeal. It determined that as of April 6, 1981, there were 20 days still remaining on the 90-day period.

Pioneer appealed from the decision of the circuit court of La Salle County granting the preliminary injunction. The Appellate Court, Third District, in *County of La Salle ex rel. Peterlin v. Mauzy* (1981), 98 Ill. App. 3d 615, held that the circuit court should have dismissed the petitioners' complaint because they had failed to exhaust their administrative remedies, and the appellate court dissolved the preliminary injunction. The injunction was dissolved on January 25, 1982, by mandate of the appellate court. (98 Ill. App. 3d 615, *cert. denied* (1982), 454 U.S. 1148, 71 L. Ed. 2d 302, 102 S. Ct. 1012.) The Board's 90-day limitation began to run again on January 26, 1982.

The Board entered an order stating that another hearing would be held on February 6, 1982. Pioneer filed a motion for a permit by default or for affirmance without an additional hearing, since the 90-day limitation for Board action had expired. Petitioners filed a motion for summary reversal of the Agency's issuance of the permit and a motion to compel the attendance of Thomas Cavanaugh and Terry Ayers, two of the Agency's employees, at the hearing on February 6, 1982. The Board did not act on Pioneer's motion for a permit by default or on petitioners' motion for summary reversal. It took those motions with the case. The Board did, however, grant petitioners' motion to compel the attendance of the two witnesses.

On February 6, 1982, the Board hearing was held in Ottawa. It began at 10:15 a.m. with opening statements by attorneys representing Pioneer, petitioners, and the Agency. During the course of the hearing, petitioners produced 78 exhibits for identification, 40 of which were admitted into evidence. The exhibits included materials from the Agency's files and the depositions of Cavanaugh and

Ayers. Petitioners' attorney questioned Cavanaugh regarding various exhibits that were introduced.

The hearing was continued until February 8, 1982. On that date, time was given for public comments. Various people made public statements, and then petitioners' attorney resumed questioning Cavanaugh. Another attorney for petitioners also questioned Cavanaugh. Michael Heaton was then called as a witness by petitioners, and he testified regarding his representation of certain of the petitioners during the proceedings before the Agency. Several public comments were then made and the hearing was closed. On February 16, 1982, the Board entered an order. The Board's order affirmed the Agency's grant of the permit to Pioneer. On March 4, 1982, the Board also filed an opinion which held that, under the 90-day limitation for Board action, Pioneer's permit had not issued; that Pioneer had not received a permit by default because petitioners failed to participate in the April 6, 1981, hearing; that the Illinois Administrative Procedure Act contested-case provisions were not applicable to the public hearing before the Agency; and that the Agency did not violate petitioners' due process rights during the hearing in November. The Board order stated that the Agency did not violate section 21(g) of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1021(g)) when it issued the permit. Section 21(g) required the permit applicant to obtain approval of municipalities within 1½ miles of the site and prohibited location of the site within 1,000 feet of a private well.

Although all three cases that have come before us on appeal deal with the same hazardous-waste-disposal site, they all hinge on different issues and consequently will be discussed separately.

We will first discuss the appeal which was brought by the Attorney General—No. 58239 in this court. The appellate court dismissed the Attorney General's appeal for lack

of standing. We disagree with the appellate court that the Attorney General did not have the authority to seek appellate review of the Board's decision under the specific facts of this case. We agree with the Attorney General's assertion that *People ex rel. Scott v. Illinois Racing Board* (1973), 54 Ill. 2d 569, rather than *Lake County Contractors Association v. Pollution Control Board* (1973), 54 Ill. 2d 16, is controlling. In *Lake County Contractors,* this court interpreted section 41 of the Environmental Protection Act, which provides in pertinent part:

> "Any party to a Board hearing, any person who filed a complaint on which a hearing was denied, any person who has been denied a variance or permit under the Act, and any party adversely affected by a final order or determination of the Board may obtain judicial review, by filing a petition for review ***." (Ill. Rev. Stat. 1979, ch. 111½, par. 1041.)

This court held that in order to come within the fourth category of section 41—"any party adversely affected by a final order or determination of the Board"—the "one who seeks review must have been a party to the Board proceeding and must be adversely affected by the order or determination of the Board which he seeks to have reviewed." (*Lake County Contractors Association v. Pollution Control Board* (1973), 54 Ill. 2d 16, 21.) In *Lake County Contractors,* the Lake County Contractors Association and the Lake County Home Builders Association appealed from a judgment of the appellate court which dismissed their complaint for a review of an order of the Pollution Control Board. The Board, in its order, had stated:

> "The District [North Shore Sanitary District] shall not permit any additions to present sewer connections, or new sewer connections, to its facilities until the District can demonstrate to the Board that it can adequately treat the wastes from those new sources so as not to violate the Environmental Protection Act, or the Rules and Reg-

ulations promulgated thereunder."

Both associations alleged that they were not-for-profit corporations whose members were engaged in the construction industry in Lake County and that enforcement of the order would result in unemployment and financial hardship for their members. Neither association had been a party to the proceedings before the Board, and this court believed that, to accept the interpretation the associations advocated of section 41 (that any "person" adversely affected by an order or determination of the Board could appeal), would interfere with the orderly procedure set forth in the Act, which allowed applications for individual variances in cases of arbitrary or unreasonable hardship. We believe that the holding in that case is correct and that the facts in the instant case clearly distinguish it from the *Lake County Contractors* case.

In the instant case, we are dealing with an appeal brought by the Attorney General of the State of Illinois, not a contractor's association. The Attorney General is the chief legal officer of the State and its departments and agencies. (Ill. Const. 1970, art. V, sec. 15; *People v. Massarella* (1978), 72 Ill. 2d 531, 534; *Environmental Protection Agency v. Pollution Control Board* (1977), 69 Ill. 2d 394, 398.) In *Environmental Protection Agency v. Pollution Control Board* (1977), 69 Ill. 2d 394, this court stated that it was unnecessary to trace the lengthy history of the powers of the Attorney General because:

> "It is sufficient to observe that this court has consistently held, under both the 1870 and 1970 constitutions, that the Attorney General is the chief legal officer of the State; that is, he or she is 'the law officer of the people, as represented in the State government, and *its only legal representative in the courts*.'" (Emphasis added.) 69 Ill. 2d 394, 398.

In *People ex rel. Scott v. Illinois Racing Board* (1973), 54 Ill. 2d 569, this court held that the Attorney General,

who was not actually a party to the proceedings before the Illinois Racing Board, could initiate judicial review of the decision of that Board. A representative of the Attorney General had participated in the licensing proceedings before the Racing Board in that case, and this court stated:

"While we acknowledge the appellant's [Attorney General's] participation in the licensing hearings, we believe more persuasive grounds exist for upholding his right to invoke the provisions of the Administrative Review Act and to appeal an adverse decision thereunder." 54 Ill. 2d 569, 574-75.

The appellate court in the instant case interpreted our opinion in *Illinois Racing Board* to very narrowly apply only in the horse-racing context. We do not agree with this extremely narrow interpretation. As the appellate court correctly noted, there is a strong public interest in a healthful environment. (See Ill. Const. 1970, art. XI, sec. 1.) As this court stated in *Environmental Protection Agency v. Pollution Control Board* (1977), 69 Ill. 2d 394, 401-02:

"The Attorney General's responsibility is not limited to serving or representing the particular interests of State agencies, including opposing State agencies, but embraces serving or representing broader interests of the State. This responsibility will occasionally, if not frequently, include instances where State agencies are the opposing parties. It seems to us that if the Attorney General is to have the unqualified role of chief legal officer of the State, he or she must be able to direct the legal affairs of the State and its agencies. Only in this way will the Attorney General properly serve the State and the public interest."

We believe that the Attorney General's appeal should not have been dismissed in this case because, as chief legal officer of this State, he has the duty and authority to represent the interests of the People of the State to insure a healthful environment. In recognition of the Attorney Gen-

eral's role to insure a healthful environment, he has been given the power and authority "to prevent air, land or water pollution within this State by commencing an action or proceeding in the circuit court of any county in which pollution has been, or is about to be, caused or has occurred, in order to have such pollution stopped or prevented either by mandamus or injunction." (Ill. Rev. Stat. 1979, ch. 14, par. 12.) If, in fact, the Agency failed to afford the citizens of this State the proper procedures relating to the issuance of Pioneer's permit, then we believe it is only proper for the Attorney General to be the People's representative in the courts on this matter.

Since we have determined that the Attorney General's appeal should not have been dismissed, we must address the issues he raises. He raises two issues, both of which are the basis of the two other appeals before this court. First, he asserts that the Agency and the Board in their administrative proceedings failed to implement the legislative policy of according greater rights to the opponents of hazardous-waste landfills and as a result violated settled judicial principles of administrative procedure, express statutory requirements, and the due process clause of the United States Constitution. Second, he asserts that the decisions below erroneously construed the statutory criteria requiring buffer zones around hazardous-waste-disposal sites and did so without ever giving the parties with the most immediate interests an opportunity to participate. Both of these arguments will be discussed within the context of the appeals to which they pertain.

In cause No. 58238, the main issue is whether the permit proceedings before the Agency and the Board were adequate and proper. The petitioners challenge the validity of the procedures the Agency used in reaching its decision with regard to the issuance of Pioneer's permit. Section 39(c) of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1039(c)) provides:

"Immediately upon receipt of a request for a permit or supplemental permit for a refuse disposal facility, the Agency shall notify the State's Attorney and the Chairman of the County Board of the county in which the facility is located and each member of the General Assembly from the legislative district in which that facility is located and to [sic] the clerk of each municipality any portion of which is within 3 miles of the facility, prior to the issuance of a permit to develop a hazardous waste disposal site, the Agency shall conduct a public hearing in the county where the site is proposed to be located."

The petitioners maintain that the Agency "issued the hazardous waste permit to Pioneer in this case on the basis of information which was never publicly disclosed, and which was never subjected to adversarial testing or scrutiny." The Agency has never denied considering information submitted by Pioneer before and after the public hearing. So the issue becomes whether the Agency could properly consider evidence which, as the petitioners suggest, was not examined and rebutted by the petitioners. Petitioners trace a series of legislative changes in the area of environmental protection and maintain that there is an intent on the part of the legislature to afford greater public rights to those persons who oppose the issuance of a hazardous-waste-disposal permit.

As the appellate court correctly noted, the Agency was required to hold the public hearing pursuant to section 39(c). However, we cannot agree with the appellate court's reasoning that, "[s]ince the Agency is not directed to conduct a public hearing if it denies a permit, section 39(c) implies that the Agency's decision to grant or deny a permit precedes the public hearing." (113 Ill. App. 3d 282, 294.) We believe that if the Agency were to make its decision regarding the issuance of a permit prior to conducting the public hearing, then the public hearing would serve no purpose. Certainly, the legislature did not intend to require a public hearing simply to create the illusion that the Agency

was considering the evidence admitted during that hearing in making its decision.

The petitioners and the Attorney General assert that the contested-case provisions of the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1979, ch. 127, par. 1001 *et seq.*) were applicable to the proceedings before the Agency and that, since the proceedings below violated the provisions of the APA, the permit issued to Pioneer is void. We agree. We believe that, pursuant to section 16(a) of the APA (Ill. Rev. Stat. 1979, ch. 127, par. 1016(a)), the contested-case provisions of the APA applied to the proceeding before the Agency in this case.

The parties in the instant case have agreed that the Agency is an "agency" within the meaning of the APA. (See Ill. Rev. Stat. 1979, ch. 127, par. 1003.01.) There is also no dispute that the permit which Pioneer sought is a "license" within the meaning of the APA (see Ill. Rev. Stat. 1979, ch. 127, par. 1003.04), or that the proceeding was a "licensing" within the meaning of the APA (see Ill. Rev. Stat. 1979, ch. 127, par. 1003.05). The dispute between the parties arises on whether the Pioneer licensing can be considered a "contested case."

Section 3.02 of the APA (Ill. Rev. Stat. 1979, ch. 127, par. 1003.02) provides:

> " 'Contested case' means an adjudicatory proceeding, not including rate making, rule-making, quasi-legislative, informational or similar proceedings, in which the individual legal rights, duties or privileges of a party are required by law to be determined by an agency only after an opportunity for hearing."

Pioneer argues that the hearing that was held was not adjudicatory but only informational, so that this section does not apply. In response, petitioners argue that the critical language which causes the contested-case provisions to be applicable to the instant case is found in section 16(a) of the APA (Ill. Rev. Stat. 1979, ch. 127, par. 1016(a)), which

provides:

> "(a) When any licensing is required by law to be preceded by notice and opportunity for hearing, the provisions of this Act concerning contested cases shall apply."

Pioneer argues, and the appellate court agreed, that the notice and hearing requirements in section 39(c) of the Environmental Protection Act is not the type of notice and hearing which triggers the applicability of section 16(a) and the contested-case provisions of the APA. We do not agree. Two elements are necessary under section 16(a) to cause the applicability of the contested-case provisions: notice and opportunity for hearing. Both elements are found in section 39(c) of the Environmental Protection Act where it provides that "the Agency shall *notify* ***" and that "the Agency shall conduct a public *hearing*." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 111½, par. 1039(c).) We disagree with the very narrow interpretation which the appellate court gives to the notice and hearing requirements in section 16(a). The appellate court held that the notice requirement of section 16(a) was "notice of the hearing," not the notice which was required under section 39(c). In the instant case, two notices were given. First, there was the initial notice to the various parties named in section 39(c) which was followed by the notice of the hearing that section 39(c) requires. Unless notice of the hearing was sent out, nobody would be aware of the hearing to be held. Also, the appellate court held that the type of hearing required under section 16(a) was not the same type of hearing required under section 39(c) because the hearing required under section 39(c) was a "public" hearing. We do not believe that the distinctions made by the appellate court have merit and therefore hold that the contested-case provisions of the APA were applicable to the hearing before the Agency.

Having decided that the contested-case provisions of the APA were applicable to the proceedings before the Agency, we must now determine if any of those provisions were vi-

olated in the proceeding before the Agency. According to the contested-case provisions of the APA, the Agency is required to keep a record of all the evidence which it considers in reaching a decision. (Ill. Rev. Stat. 1979, ch. 127, par. 1011.) In fact, section 11(b) of the APA requires that any "[o]ral proceedings or any part thereof shall be recorded stenographically *** to adequately insure the preservation of such testimony." (Ill. Rev. Stat. 1979, ch. 127, par. 1011(b).) There is evidence in the record of this case that there were closed-door meetings between Pioneer and the Agency during the fall of 1980, after the notice of the hearing was given. There is nothing in the record to show that those oral proceedings were recorded and made part of the "record" as required. If the Agency took "official notice" of materials, the petitioners still should have been "afforded an opportunity to contest the material so noticed." (Ill. Rev. Stat. 1979, ch. 127, par. 1012(c).) The section of the APA regarding *ex parte* consultations provides:

> "Except in the disposition of matters which they are authorized by law to entertain or dispose of on an ex parte basis, neither agency members, employees nor hearing examiners shall, after notice of hearing in a contested case or licensing to which the procedures of a contested case apply under this Act, communicate, directly or indirectly, in connection with any issue of fact, *with any person or party*, or in connection with any other issue with any party or his representative, except upon notice and opportunity for all parties to participate." (Ill. Rev. Stat. 1979, ch. 127, par. 1015.)

We believe the Agency violated this provision of the APA when it had *ex parte* communications with Pioneer. Since the contested-case provisions of the APA were violated, the decision of the Agency to issue the permit to Pioneer is void. Ill. Rev. Stat. 1979, ch. 127, par. 1014.

Since we have determined that the permit which the Agency issued to Pioneer is void for failure to comply with the contested-case provisions of the APA, the other issues raised by petitioners become moot. So too does the other

appeal before this court regarding the effect of the village of Naplate's rescission on the issuance of Pioneer's permit become moot.

In cause No. 58239, the appellate court dismissed the appeal of the Attorney General and we reverse and reinstate the Attorney General's appeal and resolve the issues raised therein. In cause No. 58238, we reverse the appellate court's affirmance of the Pollution Control Board's order, on the grounds that the contested-case provisions of the APA applied to the Agency proceeding and were violated, making Pioneer's permit void. In cause No. 58083, we vacate the judgment of the appellate court, which affirmed in part and reversed in part the judgment of the circuit court, and hold that the issues raised in that appeal are moot. Since we have determined that Pioneer's permit is void, the issue of the village of Naplate's revocation of its consent and the issue of the possible location of the hazardous-waste-disposal site within 1,000 feet of a private well must be considered on remand during a properly conducted hearing where all the parties can present evidence regarding whether the permit should issue. These causes are remanded to the Illinois Environmental Protection Agency for a new hearing which is to be conducted according to the contested-case provisions of the APA.

> *No. 58083 — Judgment vacated;*
> *cause remanded,*
> *with directions.*
>
> *No. 58238 — Judgment reversed;*
> *cause remanded,*
> *with directions.*
>
> *No. 58239 — Judgment reversed;*
> *cause remanded,*
> *with directions.*

CHIEF JUSTICE RYAN took no part in the consideration or decision of this case.